## PHELPS *v.* WYLER.

### Opinion delivered April 29, 1899.

1. MARRIED WOMAN—INSOLVENCY.—PREFERENCE OF HUSBAND.—An insolvent married woman who is justly indebted to her husband may prefer him in an assignment of her separate property for the benefit of creditors. (Page 101.)

2. ASSIGNMENT FOR BENEFIT OF CREDITORS—DELIVERY OF PROPERTY.—Under act April 19, 1895, providing that the title to property assigned for benefit of creditors shall vest in the assignee on delivery and acceptance of the assignment, a deed of assignment is not void because it provided that the property shall not be delivered to the assignee till he files his inventory and bond, where it was executed in good faith, and the assignee filed his inventory and bond and took possession. (Page 102.)

Appeal from White Chancery Court.

THOMAS B. MARTIN, Chancellor.

*Ben Isbell*, for appellant.

*Green & Roberts, Roberts & Roberts, John T. Hicks*, and *W. B. Smith*, for appellees.

BATTLE, J. For many years Mrs. M. A. Phelps, a married woman, carried on and conducted a mercantile business on her sole and separate account at El Paso, in White county, in

this state, under the name and style of M. A. Phelps & Co. Becoming much involved, and unable to continue her business profitably, on the 26th of January, 1897, she conveyed all her property, except so much as she was allowed by law to hold exempt from execution, to David M. Dayle, as assignee, in trust for the payment of her debts. She directed the payments of the same as follows: First. She directed that Ben Isbell be paid $50 for preparing her deed of assignment. Second. She directed that the note executed by her to Lee Burrow on the 1st of January, 1897, for $110, for clerk hire, be paid. Third. She directed that her husband, J. T. Phelps, be paid the sum of $477.50, which she owed him on account for money loaned, and used by her in her business. Fourth. After the payment of the debts mentioned in the order named, she directed that the residue of her property thereafter remaining be applied pro rata to the payment of her other debts.

The deed of assignment was duly acknowledged, filed, and recorded, and the property conveyed was delivered to the assignee. Thereafter, on the 13th of January, 1897, Wyler, Ackerland & Co. and others filed in the White chancery court a complaint against Mrs. Phelps, Isbell, Burrow, and J. T. Phelps, therein alleging that Mrs. Phelps was indebted to them for goods, wares, and merchandise sold to her for the purpose of carrying on a general mercantile business at El Paso; that she pretended to convey all her property to an assignee for the benefit of her creditors, but had fraudulently withheld a material part thereof; that she had preferred her husband in the assignment, and directed that he be paid $477.50, when in truth and fact she was not indebted to him in any amount whatever; and that the deed was void because it provided that the assignee should not take possession of the property until he had filed his inventory and bond as required by the statute. They asked that the assignment be set aside, and for other relief, which they specified.

·The defendants answered, and denied all allegations of fraud.

On the 17th of June, 1897, upon the hearing of the cause, the court found and declared the deed void, because made in

fraud of the creditors of the assignor, and decreed that the assignment should be treated as a general assignment for the benefit of all the creditors of Mrs. Phelps, except her husband, whose claim it declared fraudulent.

The evidence fails to show that Mrs. Phelps fraudulently withheld from her assignment any material part of her property. Some small articles of little value were accidentally overlooked, and worthless notes, barred by the statute of limitations, were not included in the schedule attached to the deed of assignment, but the articles overlooked and the worthless notes were delivered to the assignee, to be disposed of for the benefit of creditors.

The attack upon the assignment on the ground that it provides that the property shall not be delivered to the assignee until he filed his inventory and bond as required by law is unsupported by reason. We are unable to see how the interest of creditors could be affected by it. We have heretofore held, under statutes which have been amended, that assignments were void when made with the understanding that the assignee should take possession of the property assigned before he filed his inventory and bond. He can now take possession upon the execution of the deed of assignment. The failure to do so does not necessarily delay the assignee in the discharge of his duties, or the creditors in the collection of their debts, or in the enforcement of their rights.

The attack upon the assignment because of the preference of the husband is the only objection which deserves serious consideration. The facts relied upon to show that this preference was fraudulent are substantially as follows: In 1887, J. T. Phelps failed in business. How his assets were disposed of is not satisfactorily shown. He was in debt to his wife's father for land in the sum of $400. He paid this, according to the direction of his father-in-law, to his wife. When testifying in this cause he was asked, "When you failed in business, what became of the proceeds of your stock of goods?" He replied, "Part of it—about $400—went to M. A. Phelps, part to Wolf & Bro., and part to other creditors." He was then asked, "Who did you sell out to?" He answered, "I sold out

to my wife and Mr. Booth, her father." The evidence, however, shows that his wife succeeded him in business, and that she carried on a mercantile business at El Paso on her sole and separate account, and that he, for a stipulated salary, contracted and managed it in her name as her agent, and did so for ten years. In the meantime, he paid off and discharged his debts according to terms which were agreed upon by him and his creditors. He borrowed $265 from one person and $150 from another. He gave his notes for these amounts, his wife joining in the execution of them as surety, and secured them by mortgages on his real estate. One of these amounts was borrowed about two years before the assignment, and the other about twelve months. He loaned this money to his wife, and she invested it in her business. On account of this loan and interest she is indebted to him in the amount for which he was preferred in her assignment. His wife continued in business for ten years, or longer, when she failed, and made an assignment, reserving and taking out of her property so much as she is entitled to hold free and exempt from sale under execution. She let her son, a boy about sixteen years old, have this property, to enable him to commence a mercantile business, and he has used it accordingly; his father, J. T. Phelps, occasionally assisting him.

Do these facts prove that that the assignment was fraudulent? In *Bank of Little Rock* v. *Frank*, 63 Ark. 22; 37 S. W. 401, it is said: "Fraud is never presumed, but must be proved, and the burden of proving it is upon the party alleging it. It need not be shown by direct or positive evidence, but it may be proved by circumstances. 'Slight circumstances, or circumstances of an equivocal tendency, or circumstances of mere suspicion leading to no certain results,' are not sufficient evidence. 'They must not be, when taken together and aggregated, when interlinked and put in proper relation to each other, consistent with an honest intent. If they are, the proof of fraud is wanting.' They may be sufficient to excite suspicion, but suspicion is not the equivalent of proof. Circumstances necessary to prove fraud must be such as naturally, logically, and clearly indicate its existence.'"

In this case J. T. Phelps has satisfied his creditors. The plaintiffs are creditors of his wife. They certainly have no right to complain of her holding too much property, nor do we understand that they do. The fact that Mrs. Phelps claimed that she was indebted to her husband, and directed that he be paid in preference to others, excites their suspicion. But the evidence shows that she was indebted to him for money loaned in the sum preferred, and there is no evidence to the contrary. This, however, does not render the assignment fraudulent. At common law the contracts of husband and wife with each other are void, but in equity a promise of one to repay a loan made in good faith by the other is obligatory and enforceable. *Pillow* v. *Sentelle*, 49 Ark. 438. It has been held that "when the husband is justly indebted to the wife he may, without fraud, prefer her to his other creditors, and may make a valid appropriation of his property to pay her claim, even though he is thereby deprived of the means to pay other debts." *Ferguson* v. *Spear*, 65 Me. 277; *Brigham* v. *Fawcett*, 42 Mich. 542, 4 N. W. 272. Under our statute, she has the authority to make an assignment of his property used in her separate business to pay her debts. *Hickey* v. *Thompson*, 52 Ark. 238, 12 S. W. 475; *Third National Bank* v. *Guenther*, 123 N. Y. 568, 25 N. E. 986; *Schuman* v. *Peddicord*, 50 Md. 560. Having this authority, there is no reason why she cannot, in equity, prefer her husband to her other creditors, as he can prefer her, as to any debt she may justly owe him, in any assignment she can make in the settlement of her business. *Third National Bank* v. *Guenther*, 123 N. Y. 568, 25 N. E. 986. *Schuman* v. *Peddicord*, 50 Md. 560.

Does the fact that Phelps managed and controlled her business prove that he was preferred for a simulated debt? It was not inconsistent with good faith, dishonest or unlawful for him to serve his wife in the capacity of an agent. He managed her business for ten years. She failed, like thousands of others have done whose business was not managed by husbands. Her fate was like that of many who have honestly failed. The fact that he managed her business was no evidence of a dishonest failure, nor was it evidence that she did not owe him.

It was natural for him to assist her in any way he could, and that he did so by loaning her money is no evidence that the debt thereby contracted was fraudulent. *Third National Bank* v. *Guenther*, 123 N. Y. 568, 25 N. E. 986.

We think that the evidence in the case fails to show that the assignment made by her was fraudulent.

The decree of the chancery court is therefore reversed, and the complaint of the plaintiff is dismissed.

ON MOTION FOR REHEARING.

(April 14, 1900.)

BATTLE, J. Appellees earnestly insist that the deed of assignment in question should be declared void, because the assignor, in pursuance of a collateral agreement entered into by him and the assignee contemporaneously with the execution of the deed, retained possession of the property assigned until after the assignee filed an inventory and executed a bond in the manner provided by the statute. Is this contention correct?

Prior to the enactment of the act entitled "An act to regulate assignments for the benefit of creditors," approved April 19, 1895, the statutes of this state provided that "in all cases in which any person shall make an assignment of any property * * * for the payment of debts, before the assignee thereof shall be entitled to take possession, sell or in any way manage or control any property so assigned, he shall be required to file in the office of the clerk of the court exercising equity jurisdiction a full and complete inventory and description of such property, and also make and execute a bond to the state of Arkansas in double the estimated value of the property in said assignment, with good and sufficient security, to be approved by the clerk of said court, conditioned that such assignee shall execute the trust confided to him, sell the property to the best advantage and pay the proceeds thereof to the creditors mentioned in the assignment according to the terms thereof, and faithfully perform the duties according to law." Under this provision of the statute it was held that "where, in pursuance of a collateral agreement of the assignor and assignee, entered into contemporaneously with the execution of a

deed of assignment for the benefit of creditors, the assignor delivers possession of the property assigned to the assignee before the bond and inventory required by law are filed, the assignment is void as to creditors." This was so held because the assignee was required to file the inventory and execute the bond before taking possesion of the property for the purpose of protecting creditors. The theory was that the interest of the assignor in the preservation of the property assigned would make it safer in his hands than it would be in the possession of the assignee before the filing of the inventory and bond. *Gilkerson-Sloss Commission Co.* v. *London*, 53 Ark. 88, 13 S. W. 513, 7 L. R. A. 403.

Under the act of April 19, 1895, the title to the property assigned vests in the assignee upon the delivery and acceptance of the deed of assignment. No other act of the assignor is necessary to complete the title. The assignee is then required to take immediate possession of the property, and to file an inventory of the same and a bond with the clerk of the court having equity jurisdiction within ten days thereafter. He is impliedly authorized to enforce such right by legal proceedings, if necessary. In the event the assignment shall be declared void, the title and right to possession still remain in him in his fiduciary capacity, and the assignment becomes a general assignment for the benefit of all the creditors of the assignor pro rata, and the assignee becomes subject to the control and direction of the chancery court in the same manner he would be had he been appointed a receiver to take charge of the property. No creditor can defeat his title. He cannot, in the discharge of his duties, remain passive, and wait until the assignor delivers possession, but he is required to assert his right to the same immediately, and he is liable for the damages occasioned by his failure to do so. Any neglect to discharge this duty cannot affect the validity of the assignment, and any agreement with the assignor that he will not take such possession is void.

Under former statutes it was not the agreement made con‐ temporaneously with the execution of the deed of assignment which made the assignment void, but the delivery of the property assigned in pursuance thereof. Such agreement, unless

incorporated in the deed of assignment, was of no effect; but the delivery in pursuance thereof affected the security of the rights of creditors. The interest which the assignor had in taking care of his own property was considered some protection to his creditors. When possession was delivered to the assignee, that protection was gone, and the security of the rights of the creditors was impaired. Hence this court held that the provision of former statutes which forbade the delivery of possession to the assignee before he had filed an inventory and executed a bond was mandatory. But the retention by the assignor of the possession of the property assigned until the assignee files his bond and inventory cannot impair the security of creditor's rights. They are just as safe after the assignment as they were before. The same interest which makes them so still exists. How can it injure creditors? There is no obligation or duty upon the part of the assignor to execute a deed of assignment, and creditors lose nothing by the retention of possession by the assignor until the assignee files his bond and inventory, because until then the latter cannot sell or dispose of the property. The continuance, therefore, of the assignor in possession for such time, in good faith, under an agreement with the assignee, after the execution of the deed, will not, under the act of April 19, 1895, render the assignment void, but, in case the property be personal, it is, as in other cases, *prima facie*, and not conclusive, evidence of fraud, which may be explained so as to show that the assignment was made in good faith; and, if the property be real estate, it may be shown, in connection with other facts, for the purpose of proving a secret trust, and that the assignment was, consequently, void.

The deed of assignment in this case did not authorize the assignor to hold possesssion of the property assigned. The evidence shows that possession was not delivered to the assignee until he filed his inventory and executed a bond, and that the assignor remained in possession until that time. When the inventory and bond were filed, all the property assigned was delivered to the assignee. The evidence shows that the property was assigned and delivered in good faith.

As to the other grounds upon which appellees rely in their motion for reconsideration, sufficient has been said in the first opinion.

The motion is denied.

BUNN, C. J., and HUGHES, J., concur.

WOOD and RIDDICK, JJ., dissent.